IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. 95-202-CCB-3 |
| | * | |
| KEITH BRYANT | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Keith Bryant is a federal prisoner who is serving a 637-month sentence for convictions stemming from his participation in several armed bank robberies in the early 1990s. To date, Bryant has served almost 25 years of his sentence. Now pending is Bryant's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute). (ECF 355). The government opposes the motion, (ECF 368), and Bryant has replied, (ECF 369). For the reasons explained below, the motion will be granted and Bryant's sentence reduced to time served.

**BACKGROUND**

Between September 1993 and June 1994, Bryant and several co-conspirators participated in one attempted and two completed bank robberies. *See Bryant v. United States*, No. CRIM. CCB-95-0202, 2010 WL 5185794, at *1 n.1 (D. Md. Dec. 15, 2010), *aff'd*, 473 F. App'x 338 (4th Cir. 2012). Although guns were involved, no one was physically injured during the commission of these crimes.

Bryant, then in his mid-twenties, had a minimal criminal history prior to his participation in the armed bank robberies.[1] He was charged with one count of conspiracy to commit bank

---

[1] Bryant had previously been convicted of a 1992 possession of a handgun; he received a suspended sentence of one year followed by an additional year of probation.

1

robbery; three counts of bank robbery; and three counts of using and carrying a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). *Bryant*, 2010 WL 5185794, at *1. After a jury trial, Bryant was convicted on all counts. *Id*. He received a sentence of 637 months' imprisonment: 97 months for the robbery and conspiracy counts, and a consecutive 45 years for the § 924(c) counts. *Id*. Bryant, now 50 years old, has served almost 25 years of his sentence and has a projected release date in August 2041.

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-291, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id*. But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

On November 26, 2019, and December 12, 2019, Bryant submitted written requests to the warden of FCI Coleman Medium, asking him to file a motion for a reduction of Bryant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF 355-1, 355-2). The warden denied the requests on December 20, 2019. (ECF 355-3). On December 28, 2019, Bryant submitted a request for an administrative remedy to reverse the warden's decision, (ECF 355-4), which was

denied on January 13, 2020, (ECF 355-5). On March 25, 2020, Bryant filed the instant motion. The parties agree the motion is properly before the court. The only issues are (1) whether "extraordinary and compelling reasons" warrant reduction of Bryant's sentence and (2) whether the § 3553(a) factors weigh in favor of such a reduction.

## DISCUSSION

### I. "Extraordinary and compelling reasons"

Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D). According to the government, because Bryant does not move for release based on health, age, or caregiver-related reasons, he necessarily seeks release under U.S.S.G. §1B1.13 cmt. n.1(D) (the "catch-all provision"). The government argues that because Bryant's "other reasons" do not meet the BOP criteria as defined in Program Statement 5050.50,[2] he is not eligible for release.

The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act. It indicates that § 3582(c)(1)(A)(i) review is available only upon motion of the BOP,

---

[2] Program Statement 5050.50 is titled "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), and sets forth BOP regulations and implementing information relating to compassionate release.

which is no longer correct. *See* U.S.S.G. §1B1.13. Indeed, Congress amended § 3582 with the explicit goal of "increasing the use and transparency of compassionate release," *see* First Step Act § 603(b), presumably because before the amendment—when access to the courts for § 3582(c)(1)(A)(i) review depended on a BOP motion—the compassionate release statute was under-utilized. *See United States v. Beck*, --- F. Supp. 3d ----, 2019 WL 2716505, at *13 (M.D.N.C. 2019) (the First Step Act amendments to § 3582(c)(1)(A)(i) "establish[] that Congress wants courts to take a *de novo* look at compassionate release motions"). Many district courts have thus reasoned that the catch-all provision's limitation of "other" "extraordinary and compelling reasons" to those defined by the BOP is similarly inconsistent with the First Step Act. *See United States v. Redd*, --- F. Supp. 3d ----, 2020 WL 1248493, at *8 & n.18 (E.D. Va. Mar. 16, 2020) (collecting cases). As the *Redd* court explained,

> Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.

*Id*. at *7; *see also United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]ependence on the BOP to determine the existence of an extraordinary and compelling reason . . . is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act."). The court agrees with this reasoning. While Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are "extraordinary and compelling reasons" to reduce a sentence. *See Redd*, 2020 WL 1248493 at *4; *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr.

4

22, 2020) (collecting cases).[3]

Bryant's proffered "extraordinary and compelling reasons" for a sentence reduction focus on the fact that the bulk of his sentence was based on "stacked" § 924(c) charges. At the time of Bryant's sentencing, if multiple § 924(c) counts were charged in the same indictment, the first § 924(c) conviction carried a mandatory, five-year consecutive sentence, and each additional § 924(c) conviction added another 20 years.[4] This was because under the original version of the statute, a § 924(c) conviction was considered "second or subsequent"—thus triggering the 20-year penalty—even if the *first* § 924(c) conviction was obtained in that same case. *See Deal v. United States*, 508 U.S. 129, 132–33 & n.1 (1993). As Bryant was convicted on three § 924(c) counts, the sentencing judge was required to tack 45 years onto Bryant's sentence.

As part of the First Step Act, Congress amended § 924(c) to eliminate the practice of "stacking" sentences in this way. *See* First Step Act § 403(a). The phrase "second or subsequent conviction" was replaced with "violation of this subsection that occurs *after a prior conviction under this subsection has become final.*" *See id.* (emphasis added). Under the amended statute, a defendant like Bryant—with minimal criminal history, but convicted of multiple § 924(c) counts arising from a single indictment—is no longer subject to the 20- or 25-year penalty. Accordingly, if Bryant were sentenced today, his three § 924(c) convictions would result in a sentence enhancement of 15 rather than 45 years.

Multiple district courts have reasoned that "the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment

---

[3] The existence of conflicting opinions on this issue does not change the court's conclusion that it has independent discretion to identify "extraordinary and compelling reasons" to reduce a sentence. *See United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) ("Other courts seem to treat the current Policy Statement as binding even after the First Step Act." (collecting cases)).

[4] In 1998, Congress amended § 924(c) to increase the mandatory minimum for a "second or subsequent" § 924(c) conviction from 20 years to 25 years. *See* Pub. L. 105-386, § 1(a), Nov. 13, 1998, 112 Stat. 3469.

constitutes an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)." *See United States v. Owens*, No. 97-CR-2546-CAB, ECF 93 at 4 (S.D. Cal. Mar. 20, 2020) (collecting cases). The court agrees with the reasoning of these courts. The fact that Bryant, if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an "extraordinary and compelling" reason justifying potential sentence reduction under § 3582(c)(1)(A)(i).

The government argues that the changes to § 924(c) cannot form the basis for sentence reduction under § 3582(c)(1)(A)(i), as the First Step Act did not make the amendments to § 924(c) retroactive. The court is not persuaded. The fact that Bryant's sentence will not be reduced pursuant to a retroactive application of the amended § 924(c) does not prohibit the court from considering this legislative change in deciding whether to reduce Bryant's sentence. As one district court explained, "[i]t is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis." *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) (emphasis in original); *accord United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *1, 4 (D. Neb. Nov. 14, 2019); *see also Redd*, 2020 WL 1248493, at *9. Moreover, granting compassionate release on the basis of the amended § 924(c) is not obviously contrary to congressional intent. The portion of the First Step Act amending § 924(c) is titled "Clarification of Section 924(c) of Title 18, United States Code," *see* First Step Act § 403, suggesting that Congress never intended the statute to result in a "stacked" sentence like Bryant's. *See Haynes*, 2020 WL 1941478, at *16. Accordingly, pursuant to its independent discretion, the court finds that Bryant's continued incarceration under a sentencing scheme that has since been substantially

amended is a permissible "extraordinary and compelling" reason to consider him for compassionate release.[5]

## II. Section 3553(a) factors

The compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court considers (1) Bryant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See Redd*, 2020 WL 1248493, at *8 (citing 18 U.S.C. § 3553(a)(1)–(6)).

With respect to Bryant's personal history and characteristics, the court notes that Bryant was relatively young—24 years old—and had a minimal criminal record when he agreed to participate in the bank robberies. But the court also places great weight on Bryant's post-sentencing conduct, which "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United* States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). Bryant has a minimal disciplinary record; he has incurred only three infractions over the course of his incarceration, none of which were in the last 13 years. (ECF 355-6). Bryant has participated in extensive educational, vocational, and rehabilitative programming. He has

---

[5] The government also argues that the court's independent discretion in this way amounts to "an exercise of plenary pardon powers," impermissibly intruding upon the President's exclusive power to grant clemency. (ECF 368 at 21). The court disagrees. Bryant has not petitioned this court for clemency; he is seeking compassionate release pursuant to a federal statute that has recently been amended to increase the role of the judiciary. Contrary to the government's suggestion, the court's exercise of its independent discretion to determine which reasons for release are "extraordinary and compelling" does not violate separation of powers.

completed over 1,000 hours of computer-related coursework, a 2,000-hour cleaning apprenticeship, a 150-hour electrical course, an introductory commercial driver's license course, and various other classes. (*See* ECF 355-7 (Inmate Education Data Transcript); 355-8 (BOP Certificates); ECF 355-9 (BOP Psychology Records)). In August 2017, July 2018, and August 2019, Bryant received certificates of appreciation for his contributions to the prison education department, specifically recognizing his role as a GED tutor. (ECF 355-8 at 22, 17, 29).

Bryant has also served as a mental health companion and tutor in the Skills Program, a "Residential Mental Health Treatment Program for inmates with significant [impairments in] mental health, cognitive and/or intellectual functioning." (ECF 355-10 (Inmate History Work Detail); ECF 355-11 (description of Skills Program)). The Skills Program Coordinator, Dr. Benitez, has described Bryant as "a positive role model" who is "reliable, "non-aggressive," and "respected by both staff and other inmates." (ECF 355-11). A BOP progress report prepared on January 28, 2020, echoes the sentiments of Dr. Benitez, noting that "Bryant continues to demonstrate the desire to make positive changes not only within himself, but to help facilitate positive growth within ALL members of the Skills Program Community. Bryant is considered a positive role model within the Skills Program and the institution." (ECF 355-12). Moreover, fifteen fellow inmates wrote letters on Bryant's behalf, describing the positive impact he has had on their lives. (*See* ECF 355-13–355-26). From all accounts, Bryant is a much different man today than he was when he participated in the armed bank robberies. Moreover, Bryant appears to be well equipped to handle the potential challenges of reentry.[6]

Bryant has put together a release plan, stating his intention to move in with his cousin and her husband in Pikesville, Maryland, if he is granted compassionate release. (ECF 355-38). He

---

[6] The court acknowledges that Bryant may face additional reentry challenges due to the COVID-19 health crisis, including in securing employment.

plans to seek employment at a distribution warehouse, continue taking classes at a local community college, and seek counseling services to aid in his reentry. (*Id*.).[7]

The court acknowledges that Bryant's offenses were indeed serious. While no one was physically injured, Bryant's actions undoubtedly caused psychological pain to his victims. (*See* ECF 368 at 16–17 (excerpts from victim impact statements)). The court believes that the 25 years in prison Bryant has already served reflect the seriousness of his conduct and demonstrate the need for deterrence, public safety, and respect for the law. But Bryant's continued incarceration would be both disproportionate to the seriousness of his offense and to what Congress now deems appropriate for this kind of conduct. Indeed, Bryant's 637-month sentence is roughly twice as long as federal sentences imposed today for murder.[8] And as the court explained above, the changes to § 924(c) mean that if sentenced today, Bryant would likely receive at least 30 fewer years on his sentence.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Bryant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Combined with the "extraordinary and compelling" fact that most of Bryant's lengthy sentence resulted from the now-eliminated practice of "stacking" § 924(c) sentences, the court concludes that Bryant is entitled to compassionate release.

## CONCLUSION

---

[7] Defense counsel has communicated to the court that Bryant's cousin has appropriate space within her home to accommodate a fourteen-day quarantine period post release.
[8] According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months. *Redd*, 2020 WL 1248493, at *9 n.20 (citing United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2018, Fourth Circuit,* available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf).

For the forgoing reasons, Bryant's motion for sentence reduction will be granted and his sentence will be reduced to time served. Based on the information available to the court regarding COVID-19, and the government's representations that FCI Coleman Medium does not yet have a confirmed case of the virus, the court will order immediate release rather than permit a fourteen-day delay. The terms and conditions of supervised release to which Bryant was originally sentenced will remain in place, with the added condition that for the first fourteen days, Bryant will remain at home at home except for medical or other emergencies. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows.

| 4/30/20 | /S/ |
|---|---|
| Date | Catherine C. Blake<br>United States District Judge |